**PALL CORPORATION,**
Plaintiff–Appellee,

v.

**HEMASURE INC., Defendant–Appellant.**

No. 98–1388.

United States Court of Appeals, Federal Circuit.

June 8, 1999.

H. Michael Hartmann, Leydig, Voit & Mayer Ltd., of Chicago, Illinois, argued for plaintiff-appellee. With him on the brief were Mark E. Phelps, Bruce M. Gagala, and David M. Airan. Of counsel was Paul J. Kornicsky.

Paul J. Zegger, Pennie & Edmonds LLP, of Washington, D.C., argued for defendant-appellant. With him on the brief was Stanton T. Lawrence, III, of Washington, D.C., and John D. Garretson, of New York, New York.

Before MAYER, Chief Judge, NEWMAN and SCHALL, Circuit Judges.

PAULINE NEWMAN, Circuit Judge.

Hemasure, Inc. appeals the decision of the United States District Court for the Eastern District of New York[1] granting, upon cross-motions for summary judgment, Pall's motion that Hemasure's LeukoNet Pre-storage Leukoreduction System infringes claim 39 of Pall Corporation's United States Patent No. 5,451,321. The

---

1. *Pall Corp. v. Hemasure Inc.*, No. 96–CV–436 (E.D.N.Y. April 24, 1998) (Judgment); (July 14, 1997) (Memorandum and Order).

judgment of infringement is reversed, and judgment of noninfringement is entered in favor of Hemasure.

### Background

The '321 patent, entitled "Venting System," describes and claims a system that filters leukocytes from blood, as is done to improve the storage life of donated blood and minimize disease transmission. The claimed system moves and collects the blood, using porous membranes. Claim 39, the only claim now at issue, reads:

39. A method for processing blood or a blood product, comprising:

■ passing the blood or blood product through a leukocyte depletion medium;

■ passing gas displaced by the blood or blood product through a gas outlet comprising a porous medium until the blood or blood product contacts the porous medium; and,

■ passing gas through a gas inlet comprising a porous medium to drive additional blood or blood product through the leukocyte depletion medium.

(Paragraph numbers added.)

The '321 patent describes the system wherein the blood to be treated flows by gravity from a supply container through a leukocyte filter and then to a receiving container. Two membrane filters, the "porous medium" in claim clauses [2] and [3], control the inlet and outlet of gas, which is usually sterile air. The gas aids in moving the blood through the system and in driving all of the blood through the leukocyte filter and into the receptacle. The membranes also serve to exclude bacteria and other contaminants.

The gas inlet, claim clause [3], contains a hydrophobic membrane located upstream of the leukocyte filter. A hydrophobic (or liquophobic) membrane allows passage of gas irrespective of whether liquid also contacts the membrane. Conversely, a hydrophilic membrane allows the gas to pass only until the membrane is contacted and wetted by liquid, upon which the membrane holds the liquid and ceases to allow passage of the gas.

The gas outlet porous medium, claim clause [2], is described in the specification as comprising a hydrophilic membrane located between the receiving container and the outside environment (or connected to a gas recycle system). It allows the gas in the system to escape as it is displaced by the moving blood, preventing the formation of back pressure against the flow of blood through the system. The membrane functions like a valve, whereby the displaced air escapes when the membrane is dry, then seals itself when it is wetted by the blood, preventing both loss of blood and reintroduction of air. The system of the '321 patent is illustrated in Figure 1 of the '321 patent:

FIG. 1

In Fig. 1, a typical embodiment, conduits (12) and (15) connect the leukocyte filter (14) to the supply container (11) and the receiving container (17) respectively. The gas inlet (13) is upstream of the leukocyte filter and the gas outlet (16) downstream.

■ Hemasure stipulated to the validity and enforceability of claim 39, and Pall has not appealed the district court's ruling that claim 45 is not infringed. The only issue on appeal is infringement of claim 39.[2]

## DISCUSSION

■ Analysis of patent infringement starts with "construction" of the claim, whereby the court establishes the scope and limits of the claim, interprets any technical or other terms whose meaning is at issue, and thereby defines the claim with greater precision than had the patentee. Although the construction of the claim is independent of the device charged with infringement, it is convenient for the court to concentrate on those aspects of the claim whose relation to the accused device is in dispute. On appeal the Federal Circuit is required to construe the claim *de novo;* thus we do so without deference to the rulings of the trial court. *See generally Cybor Corp. v. FAS Technologies, Inc.,* 138 F.3d 1448, 46 U.S.P.Q.2d 1169 (Fed.Cir.1998) (en banc).

■ A patent claim is construed by examining the claim in the context of the specification, drawing on the specification for an understanding of what is covered by the claim, and looking to the rejections, explanations, and revisions that comprise the record of the patent examination. *See Markman v. Westview Instruments, Inc.,* 52 F.3d 967, 979, 34 U.S.P.Q.2d 1321, 1329 (Fed.Cir.1995) (en banc), *aff'd,* 517 U.S. 370, 116 S.Ct. 1384, 134 L.Ed.2d 577, 38 U.S.P.Q.2d 1461 (1996); *Mannesmann Demag Corp. v. Engineered Metal Products Co., Inc.,* 793 F.2d 1279, 1282, 230 U.S.P.Q. 45, 46 (Fed.Cir.1986). The subject matter of the invention and its delineation in the claims is construed as it would be under-

---

2. In *Cardinal Chemical Co. v. Morton Int'l, Inc.,* 508 U.S. 83, 113 S.Ct. 1967, 124 L.Ed.2d 1, 26 U.S.P.Q.2d 1721 (1993), the Supreme Court mandated that the Federal Circuit review the trial court's decision on the issue of validity, even when ruling on appeal that the patent is not infringed. However, the Court did not require the lower courts to decide validity when the parties did not place validity at issue. Thus the issue of patent validity is not before us.

stood by persons knowledgeable in the field of the invention. *Multiform Desiccants, Inc. v. Medzam, Ltd.*, 133 F.3d 1473, 1478, 45 U.S.P.Q.2d 1429, 1433 (Fed.Cir. 1998); *Hoechst Celanese Corp. v. BP Chemicals Ltd.*, 78 F.3d 1575, 1578, 38 U.S.P.Q.2d 1126, 1129 (Fed.Cir.1996). Thus a technical term is taken to have the meaning that it would ordinarily have in the field of the invention, unless it is shown that the inventor used the term with a special meaning and that persons of skill in the field would so understand the usage. *Id.*

■ When the district court has held that the "construction" of the claim has also decided the question of infringement, and has granted summary judgment to

that effect, we give plenary review to the summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *EMI Group North America, Inc. v. Intel Corp.*, 157 F.3d 887, 891, 48 U.S.P.Q.2d 1181, 1184 (Fed.Cir.1998).

A

■ The district court construed the '321 patent claims with an eye to the accused Hemasure system, concentrating on those claim terms whose scope was disputed as applied to the accused system. The Hemasure system, as shown in Hemasure's 510(k) submission to the FDA for the accused product, is pictured as follows:

In the Hemasure system, blood flows from the "red blood cell bag" through a chamber containing a leukocyte filter and into the "red blood cell storage bag." Air is removed from the red blood cell storage

bag by releasing the "air removal clamp" and manually compressing the red blood cell storage bag. Hemasure concedes that its system performs the step of claim clause [1], and that it has a gas inlet

porous medium (the "in-line vent filter" in the illustration) as set forth in claim clause [3]. The issue of infringement, and thus the disputed aspect of the claim, relates to the claim clause [2] step of passing displaced gas through a gas outlet porous medium.

The Hemasure system contains a hydrophilic membrane in the filtration chamber immediately downstream of the leukocyte filter (near the upper right corner of the "Leukonet Filter" in the above diagram). This membrane first passes the displaced air out of the chamber as the chamber fills with blood. Then, when the chamber has filled with blood the now-wet membrane prevents the passage of air so that blood in the filtration chamber can be removed by siphoning action at the end of the process. Additional upstream air pressure combined with siphoning action of the downstream blood empty the filtration chamber through the U-shaped chamber, as shown in the illustration. Thus, air and siphoning action clear the filter chamber, permitted by the hydrophilic membrane that closes the outlet to air while the blood is flowing past it.

Pall states that clause [2], properly construed, is met by this part of the Hemasure system. Hemasure states that the "gas outlet" in claim clause [2] refers to the Pall system's external vent of air after the filtered blood is collected. Hemasure states that it is not in accordance with the description of the invention in the '321 specification to construe as the "gas outlet comprising a porous medium" any porous medium located downstream of the leukocyte filter. Pall states that the Hemasure hydrophilic membrane separates air from the blood as it moves into the line leading to the receiving bag, and that this usage is literally within the scope of clause [2], as the district court held, or in any event constitutes infringement under the doctrine of equivalents. Hemasure responds that its membrane serves an entirely different purpose in its system, at a different location, and that the district court clearly

erred in its construction of clause [2] so as to find infringement.

The district court construed the clause [2] "gas outlet comprising a porous medium" to mean any "particularized 'hole' covered by a porous membrane" which is located downstream of the leukocyte filter and permits gas to pass through the membrane when dry, but prevents such passage when the membrane is wet by blood. Applying this claim construction, the court held that the Hemasure system contains a gas outlet porous medium as in clause [2], and granted summary judgment of infringement of claim 39.

We deem the district court's claim construction to be unduly broad. The '321 patent explains that the invention is directed to facilitating the air-driven gravity flow of blood through the leukocyte filter, reducing back pressure and minimizing air contact with the blood after the filtration is complete. The specification describes or suggests no role or location of the "gas outlet comprising a porous medium" other than to remove gas at the outlet of the system while retaining the blood and barring reentry of air. We conclude that the correct interpretation of claim clause [2] requires that the gas outlet porous medium be placed so as to serve that purpose.

This construction is not reasonably met by the Hemasure hydrophilic membrane that is used within the filtration chamber. As Hemasure points out, that membrane does not effect a separation of air expelled from the blood. The Hemasure system does not have a hydrophilic membrane at the gas outlet of the system. Hemasure uses a plastic bag to receive the blood after it leaves the leukocyte filter chamber, along with any air that flows through the system. After all of the blood and accompanying air have entered the plastic receiving bag, the air is manually expelled by squeezing the bag (called "burping" by Hemasure) and the bag is clamped shut to prevent re-entry of the air.

Pall's argument that the gas outlet "may be included in any of the various elements

of the assembly," quoting from the '321 specification, does not embrace every placement of a hydrophilic membrane in the system. The hydrophilic membrane located in the Hemasure filter chamber is not a "gas outlet" as contemplated by the specification and in claim 39. The membrane must effect an outlet of gas from the system, whereas the placement and use of the hydrophilic membrane in the Hemasure system is unrelated to the venting of gas from the blood.

We conclude that on the correct interpretation of "gas outlet comprising a porous membrane," claim 39 can not reasonably be found to be literally infringed by the Hemasure system. The judgment of infringement is reversed; judgment that there is not literal infringement shall be entered in favor of Hemasure.

### The Doctrine of Equivalents

The doctrine of equivalents was argued upon both parties' motions for summary judgment, but was not reached by the district court in view of the court's ruling that there was literal infringement. Pall proposes that if we should reverse the judgment of literal infringement, the issue of equivalency requires trial. Hemasure, in turn, urges the Federal Circuit to decide the issue of equivalency on the summary judgment record, because its device is not substantially the same as that claimed by Pall, and also that prosecution history estoppel bars equivalency as a matter of law.

Prosecution history estoppel bars a patentee from imposing liability for infringement by an otherwise equivalent device or method, when the claim scope that would have reached the accused device or method was relinquished by the patentee in order to avoid the prior art. _Mannesmann Demag_, 793 F.2d at 1284, 230 U.S.P.Q. at 48. _See Warner–Jenkinson Co. v. Hilton Davis Chem. Co._, 520 U.S. 17, 32, 117 S.Ct. 1040, 137 L.Ed.2d 146, 41 U.S.P.Q.2d 1865, 1872 (1997) (prosecution history estoppel applies when amendments

have been required for reasons of patentability).

Although we have concluded that the hydrophilic membrane as located in the leukocyte filter chamber is not a gas outlet as that term is used in the patent, there is a gas outlet in the Hemasure device of similar function to that described in the patent. This is the clamped tube between the collection bag and the gas reservoir bag which transmits gas out of the collection bag when it is "burped." This tube is the only potential embodiment in the accused device of a gas outlet in accordance with claim clause [2] as correctly construed. We first consider whether the Hemasure clamped tube could be found to be an equivalent to the claimed "gas outlet comprising a porous medium" applying the rules governing summary judgment and drawing factual inferences favorably to Pall. _See EMI Group_, 157 F.3d at 891, 48 U.S.P.Q.2d at 1184 (after construing the claims, this court applies the rules of summary judgment to the facts of infringement). We conclude that, resolving reasonably disputed facts in favor of Pall, equivalency could not be found by a reasonable jury. The structures with respect to clause [2] can not be found to be substantially the same, and there is not sufficient factual basis for finding substantial identity of function, way, and result, between Pall's outlet membrane and the Hemasure clamped outlet tube.

This conclusion is reinforced by the prosecution history. The application of prosecution history estoppel is a question of law. _LaBounty Mfg., Inc. v. United States Int'l Trade Comm'n_, 867 F.2d 1572, 1576, 9 U.S.P.Q.2d 1995, 1998 (Fed.Cir.1989). The clause [2] porous medium was added by amendment to the claims in view of a rejection based on a reference to Djerassi, Pall stating that "There is no teaching in Djerassi of a gas outlet comprising a porous medium (e.g. as in claim 1)." Thereafter the claim that became patent claim 39 was added, containing the limitation of the porous medi-

um in the gas outlet. That the added claim was not amended during prosecution but was granted as filed does not preclude the application of prosecution history estoppel. When a claim limitation is added in order to overcome a specific cited reference, estoppel as to that limitation is generated whether the limitation is added by amendment to pending claims, or by the submission of new claims containing the limitation. *See Builders Concrete, Inc. v. Bremerton Concrete Prods. Co.*, 757 F.2d 255, 225 U.S.P.Q. 240 (Fed.Cir.1985) ("The fact that the 'passage' clause of patent claim 10 was not itself amended during prosecution does not mean that it can be extended by the doctrine of equivalents to cover the precise subject matter that was relinquished in order to obtain allowance of claim 1.")

We conclude that the Djerassi reference effected an estoppel against enlarging the scope of clause [2] to reach, as an equivalent, a gas outlet that does not bear a porous membrane. Although the Hemasure system does contain a hydrophilic membrane, it is not located at the system outlet, but inside the filtration chamber where it serves the entirely different function of facilitating the siphon action that empties the filtration chamber of all residual blood. The Hemasure system outlet, however, is simply through a tube bearing a valve or clamp that is manually closed after the air is "burped" from the receiving container. Such an outlet was known to the art; Djerassi uses a simple manually operated closure, as does Hemasure. Thus although the Hemasure system includes the step of removing the displaced gas through an outlet tube, the prosecution history estops Pall from asserting that the Hemasure structure and mechanism is an equivalent of the membrane of claim clause [2].

Thus, on the grounds of both prosecution history estoppel and absence of equivalency in fact, we conclude that judgment of non-infringement must be rendered in favor of Hemasure.

*Finality*

Pall states that this is an "interlocutory appeal" under 28 U.S.C. § 1292(c)(2), because the issue of equivalency had not been decided by the district court. The appeal was taken as of right under § 1292(c)(2), which permits appeal of a decision that "would otherwise be appealable ... and is final except for an accounting." *See also* 15A Charles A. Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice & Procedure: Jurisdiction 2d* § 3905.1 at 257–58 (1992) ("An order denying summary judgment is reviewable on appeal from summary judgment for the opposing party ..."); 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice & Procedure: Civil 3d* § 2715 at 268 (1998) ("if the trial court's order denying summary judgment is coupled with the grant of summary judgment to the opponent, both decisions are immediately appealable").

We have given careful consideration to Pall's suggestion that the proper path, upon reversal of the judgment of literal infringement, is remand for trial of infringement under the doctrine of equivalents. On appellate review, judgment may be awarded to the defendant as a matter of law when the plaintiff can not prevail even on its version of the disputed facts. *See Cole v. Kimberly–Clark Corp.*, 102 F.3d 524, 41 U.S.P.Q.2d 1001 (Fed.Cir. 1996) (determining, as a matter of law, whether infringement under the doctrine of equivalents could be found on remand).

There is no dispute as to the structure of the Hemasure device. The single issue relates to the gas outlet of claim clause [2]. As we have discussed, upon review of the prosecution history, the construction of the claims, and the Hemasure structure, we have concluded that there is no reasonable basis upon which Pall can establish equivalency. Thus remand for trial of the issue of equivalency is inappropriate.

The judgment of the district court is reversed. Judgment of non-infringement is entered in favor of Hemasure.

**1313**

No costs.

*REVERSED; JUDGMENT ENTERED.*