**KCJ CORPORATION, Plaintiff–Appellant,**

v.

**KINETIC CONCEPTS, INC. and KCI Therapeutic Services, Inc., Defendants–Appellees.**

No. 99–1248.

United States Court of Appeals, Federal Circuit.

Aug. 18, 2000

Stacy Y. Daniels, Spencer Fane Britt & Browne LLP, of Kansas City, Missouri, argued for plaintiff-appellant. With her on the brief were Michael F. Saunders, Teresa A. Woody, and Therese M. Schuele.

Lawrence A. Rouse, Rouse Hendricks German May PC, of Kansas City, Mis-

souri, argued for defendants-appellees. With him on the brief were Kirk T. May and David J. Rempel. Of counsel were Marcus Neil Bozeman and Vivian Williams McLeod.

Before PLAGER, CLEVENGER, and RADER, Circuit Judges.

RADER, Circuit Judge.

On summary judgment, the United States District Court for the District of Kansas ruled that Kinetic Concepts, Inc. and KCI Therapeutic Services, Inc. (collectively, Kinetic) did not infringe KCJ Corporation's (KCJ's) U.S. Patent No. 4,631,767 ('767 patent). *See KCJ Corp. v. Kinetic Concepts, Inc.,* 39 F.Supp.2d 1286 (D.Kan.1999) (*KCJ II* ). Because the district court correctly concluded as a matter of law that the claims at issue cannot cover the accused device, either literally or under the doctrine of equivalents, this court affirms.

## I.

KCJ is the assignee of the '767 patent entitled "Air Flotation Mattress." The patent claims therapeutic mattresses for preventing bedsores. These mattresses, according to the patent, "evenly distribute[ ] the weight of the body without the necessity of internal spines or other patient-contacting solid supports ... [and] permit airflow to all areas of the skin to absorb moisture and prevent heat accumulation." '767 patent, col. 2, ll. 31–35. Claim 1, the only independent claim, recites (with bracketed notations added for ease of reference):

1. An air flotation, ventilated mattress apparatus comprising:

[ (a) ] means defining *a lower, continuous, inflatable chamber* having an air-permeable, flexible upper wall portion,

[ (b) ] said upper wall portion being constructed for *substantially uniform airflow therethrough over substantially the entire plan surface area of said upper wall portion;*

[ (c) ] air-permeable secondary wall means above said chamber upper wall portion and operably coupled with said chamber-defining means,

[ (d) ] said secondary wall means being constructed for *substantially uniform passage of air therethrough over substantially the entire plan surface area of said secondary wall means,*

[ (e) ] said secondary wall means and upper wall cooperatively defining therebetween an inflatable compartment above said chamber; and

[ (f) ] means for continuously introducing positive pressure air into said chamber in order to *continuously maintain positive air pressure conditions throughout the entirety of said chamber during the entirety of operation of said mattress apparatus* and to inflate both said chamber and compartment by passage of said air into said chamber and thence through said upper wall portion and thereby maintain positive air pressure conditions in said compartment, and to cause said continuous passage of air through said secondary wall means,

[ (g) ] said mattress apparatus being free of solid internal support structure for supporting a patient,

[ (h) ] said air introduction means, upper wall portion and secondary wall means being cooperatively configured and arranged for continuous passage of sufficient positive pressure airflow through the chamber, upper wall portion, compartment, and secondary wall means for *even, substantially uniform flow of air* from said mattress apparatus so that a person lying atop the secondary wall means is supported by said pressurized air without the presence of weight-supporting structure within said mattress apparatus.

*Id.* at col. 6, ll. 8–49 (emphasis added). As shown below, Figures 2 and 3 illustrate an embodiment of the invention:

**Fig.2.**

**Fig.3.**

Figure 2 is a perspective view of the mattress with a portion of the upper secondary wall folded back to reveal the upper wall. Figure 3 is a side sectional view of the mattress 16 with a top wall 26. The bottom, side, and top walls 22, 24, and 26 define a lower inflatable chamber 34. *See id.* at col. 4, ll. 20–22. Bottom wall 22 and side walls 24 are substantially impervious to airflow while the top wall 26 is pervious. *See id.* at col. 4, ll. 25–29. "[M]attress 16 is devoid of any internal solid patient supports which could present areas of pressure contact to a patient lying on the mattress." *Id.* at col. 4, ll. 47–50.

During prosecution of the '767 patent application in the U.S. Patent and Trademark Office (PTO), the examiner rejected the claims under 35 U.S.C. § 103 (1994) as obvious over *Schild et al.,* U.S. Patent No.

4,391,009, in view of *Gammons et al.,* U.S. Patent No. 4,347,633. In response, the patentee amended claim 1 to add, *inter alia,* the "continuous" limitation in clause (a) and limitations that issued as clauses (b) and (d). The examiner then allowed the claims of the '767 patent.

Kinetic makes and sells low-air-loss mattresses. Kinetic's mattresses prevent skin breakdown by reducing the interface pressure between the skin of a bedridden patient and the support device. These accused devices include an inflatable mattress, an air supply unit, and a removable cover sheet. Each inflatable mattress is a one-piece unit consisting of three separately inflatable sections for the head, body, and legs of the patient.

In 1997, KCJ sued Kinetic, alleging infringement of the '767 patent. On December 17, 1998, the district court held a hearing to construe claim 1 of the '767 patent. *See KCJ Corp. v. Kinetic Concepts, Inc.*, 30 F.Supp.2d 1319 (D.Kan. 1998) (*KCJ I*). Specifically, the district court construed "a lower, continuous, inflatable chamber" limitation of clause (a) as follows: "A person of ordinary skill in the art of air bed engineering would read the phrase 'continuous' to mean without interruption and the word 'a' to mean one." *Id.* at 1325. The court, therefore, determined that "a ... continuous ... chamber" means "one non-interrupted inflatable chamber." *Id.*

As to clauses (b) and (d), the district court determined:

"A person of ordinary skill in the art of air bed engineering would read 'substantially uniform airflow' to mean airflow that does not substantially fluctuate over time. When added to the words 'over substantially the entire plan surface,' the claim requires [an] air flow at substantially the same rate at substantially all locations on the surface."

*Id.* at 1326.

After construing the claim, the district court granted Kinetic's motion for summary judgment of noninfringement. *See KCJ II.* Adopting the claim construction of *KCJ I*, the district court determined that the accused devices do not literally infringe claim 1 because "[KCJ] concedes that the limitations of Clause (a) and Clause (b) are not met by any of the accused devices." *Id.* at 1289 n. 2. The district court further held as a matter of law that prosecution history estoppel barred a finding of infringement under the doctrine of equivalents. KCJ appeals.

## II.

■ This court reviews without deference a district court's grant of summary judgment. *See Cortland Line Co. v. Orvis Co.*, 203 F.3d 1351, 1355, 53 USPQ2d 1734, 1746 (Fed.Cir.2000). Whether the accused device contains each claim element exactly or its equivalent is a question of fact. *See Southwall Technologies, Inc. v. Cardinal IG Co.*, 54 F.3d 1570, 1575, 34 USPQ2d 1673, 1676 (Fed.Cir.1995). In reviewing the district court's summary judgment in favor of Kinetic, this court draws all reasonable inferences from the evidence in favor of the non-movant, KCJ. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

■ A patent infringement analysis involves two steps: claim construction and application of the properly construed claim to the accused product. *See Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 976, 34 USPQ2d 1321, 1326 (Fed.Cir.1995) (en banc), *aff'd*, 517 U.S. 370, 116 S.Ct. 1384, 134 L.Ed.2d 577 (1996). The first step, claim construction, is a matter of law that this court reviews without deference. *See Cybor Corp. v. FAS Technologies, Inc.*, 138 F.3d 1448, 1454, 46 USPQ2d 1169, 1172 (Fed.Cir.1998) (*en banc*). The central focus of the infringement inquiry remains on the claim language, as illuminated by the written description and the prosecution history. *See Pitney Bowes, Inc. v. Hewlett–Packard Co.*, 182 F.3d 1298, 1309, 51 USPQ2d 1161, 1169 (Fed. Cir.1999); *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582, 39 USPQ2d 1573, 1576–77 (Fed.Cir.1996).

### A.

■ The disputed claim construction on appeal involves limitations of clauses (a), (b), and (d). Clause (a) requires "a ... continuous ... chamber." At the heart of the dispute over this limitation is the meaning of the article "a." Specifically, does the article limit the number of chambers to only one or does it cover one or more chambers?

The district court limited clause (a) to only one non-interrupted inflatable chamber. The district court stated that "the concept of multiple chambers is at fundamental odds with the concept of continuity,

and discrete multiple chambers cannot be read into the patent without sacrificing the concept of continuity." *KCJ I*, 30 F.Supp.2d at 1325. Thus, the district court "ha[d] little hesitation in concluding that [the claim] means exactly what it says: one continuous chamber." *Id.* Based on that construction, the district court held as a matter of law that clause (a) of claim 1 does not read on Kinetic's accused devices having multiple continuous chambers.

■ As noted before, the claim language itself governs claim scope. *See Vitronics*, 90 F.3d at 1582. This court has repeatedly emphasized that an indefinite article "a" or "an" in patent parlance carries the meaning of "one or more" in open-ended claims containing the transitional phrase "comprising." *See Elkay Mfg. Co. v. Ebco Mfg. Co.*, 192 F.3d 973, 977, 52 USPQ2d 1109, 1112 (Fed.Cir.1999); *Abtox, Inc. v. Exitron Corp.*, 122 F.3d 1019, 1023, 43 USPQ2d 1545, 1548 (Fed.Cir.1997); *North Am. Vaccine, Inc. v. American Cyanamid Co.*, 7 F.3d 1571, 1575–76, 28 USPQ2d 1333, 1336 (Fed.Cir.1993); *see also* Robert C. Faber, *Landis on Mechanics of Patent Claim Drafting* 531 (3d ed.1990). Unless the claim is specific as to the number of elements, the article "a" receives a singular interpretation only in rare circumstances when the patentee evinces a clear intent to so limit the article. *See Abtox*, 122 F.3d at 1023, 43 USPQ2d at 1548. Under this conventional rule, the claim limitation "a," without more, requires at least one.

■ This court has encountered "a" or "an" in patent claims on several occasions. This court has uniformly applied the general rule for indefinite articles. For instance, in *Abtox*, this court applied the rule and amplified: "The written description supplies additional context for understanding whether the claim language limits the patent scope to a single unitary [element] or extends to encompass a device with multiple [elements]." *Id.* at 1024, 122 F.3d 1019, 43 USPQ2d at 1548. Moreover, standing alone, a disclosure of a

preferred or exemplary embodiment encompassing a singular element does not disclaim a plural embodiment. "[A]lthough the specifications may well indicate that certain embodiments are preferred, particular embodiments appearing in a specification will not be read into the claims when the claim language is broader than such embodiments." *Electro Med. Sys., S.A. v. Cooper Life Sciences, Inc.*, 34 F.3d 1048, 1054, 32 USPQ2d 1017, 1021 (Fed.Cir.1994). Thus, as the rule dictates, when the claim language or context calls for further inquiry, this court consults the written description for a clear intent to limit the invention to a singular embodiment.

■ Prosecution history also may assist claim interpretation. Indeed, prosecution history "limits the interpretation of claims so as to exclude any interpretation that may have been disclaimed or disavowed during prosecution in order to obtain claim allowance." *Standard Oil Co. v. American Cyanamid Co.*, 774 F.2d 448, 452, 227 USPQ 293, 296 (Fed.Cir.1985). Accordingly, an applicant may disclaim before the PTO a plural interpretation and thus lose the benefit of the customary meaning of indefinite articles in patent claims. *See Alpex Computer Corp. v. Nintendo Co.*, 102 F.3d 1214, 1220–21, 40 USPQ2d 1667, 1671–72 (Fed.Cir.1996).

Accordingly, when claim language or context suggests an ambiguity in application of the general meaning of an article, this court undertakes an examination of the written description and the prosecution history to ascertain whether to limit the meaning of "a" or "an." For example, in *Instituform Technologies, Inc. v. Cat Contracting, Inc.*, 99 F.3d 1098, 1106, 40 USPQ2d 1602, 1608 (Fed.Cir.1996), the claim language itself belied a singular meaning. Thus, this court undertook an examination of the entire context of the language and held: "In light of the language found in the claims, specification and file history, we conclude the only correct and indeed the reasonable interpreta-

tion of claim 1 limits the scope of that claim to a process using only one vacuum cup which inherently creates a discontinuous vacuum." *Id.* In that case, the court restricted the claim to a singular interpretation because "the claim is specific as to the number of elements (one cup) and adding elements eliminates an inherent feature (discontinuous vacuum) of the claim." *Id.*

In the present case, neither the claim nor its context suggests an exceptional meaning for the article. The intrinsic evidence simply provides no support for departing from the general rule. At the outset, the claim language of clause (a), "a ... continuous ... chamber," does not specify the number of elements. Thus, under the general rules of claim construction, this court presumes the customary meaning of "a"—one or more. Furthermore, the written description does not trump that construction. Referring to Figure 3, the written description of the '767 patent discloses that "the bottom, side and top walls 22, 24, and 26 cooperatively define a lower inflatable chamber broadly referred to by the numeral 34." '767 patent, col. 4, ll. 20–22. Chamber 34 is operatively coupled to a secondary uppermost wall 36, which provides even airflow. *See id.* at col. 4, ll. 32–45. The written description at no point restricts the invention to only one chamber.

Similarly, the prosecution history of the '767 patent does not disclaim multiple chambers. Neither the amendment itself nor the accompanying remarks limits "a ... continuous ... chamber" to only a single chamber. Rather, the remarks focus on the details of the airflow, which passes through the entirety of the chamber during all operations of the mattress. Accordingly, in view of the use of an indefinite article "a" in the claim language without numerical qualifiers and the absence of disclaimers in the written description and the prosecution history, this court holds that "a ... continuous ... chamber" covers one or more continuous chambers.

Thus, under the proper claim construction, an accused device having one or more continuous chambers would fall within the scope of clause (a). In the present case, undisputed evidence shows that Kinetic's accused devices have three chambers. Accordingly, this court concludes that clause (a) reads on Kinetic's accused devices. The district court's misreading of the article in this claim, however, is harmless error in light of the meaning of the other clauses.

**B.**

The district court construed clause (b)—an "upper wall portion being constructed for substantially uniform airflow therethrough over substantially the entire plan surface area of said upper wall portion"—and clause (d)—"secondary wall means being constructed for substantially uniform passage of air therethrough over substantially the entire plan surface area of said secondary wall means" – to require "air flow at substantially the same rate at substantially all locations on the surface." *KCJ I,* 30 F.Supp.2d at 1326. The district court thus required uniformity of airflow both temporally and spatially.

This court thus examines whether clauses (b) and (d) require an airflow uniform both in time and space. During the trial court's proceedings, "[t]he parties agree[d] that when the claim language refers to 'substantially uniform passage of air,' it means airflow which is substantially steady, constant or continuous, as opposed to fluctuating intermittent or alternating over time.... [However,] [t]hey disagree[d] about *where* the patent claims the substantially steady air flow will occur." *Id.* at 1325–26. On appeal, KCJ maintains that the "continuous passage of air" requires uniform airflow only in a temporal sense. Specifically, KCJ asserts: "As used in clauses (b) and (d) of [c]laim 1 of the '767 patent, 'substantially uniform airflow over substantially the entire plan surface area' means that wherever air comes through anywhere over the surface area, it

will flow at a substantially uniform or constant rate over time." This court, however, agrees with the district court that claim 1 requires uniformity in space as well as time.

First, the claim language itself requires spatial uniformity. Clause (b) requires "uniform airflow therethrough over *substantially the entire plan surface area.*" '767 patent, col. 6, ll. 12–13 (emphasis added). Similarly, clause (d) requires "uniform passage of air therethrough over *substantially the entire plan surface area.*" *Id.* at col. 6, ll. 19–20 (emphasis added). As the district court aptly noted, "[t]he claim demands that air flow through all locations on the surfaces." *KCJ I*, 30 F.Supp.2d at 1326. To limit uniformity to temporal aspects would render these limitations meaningless.

The written description of the '767 patent reinforces the essential nature of spatial uniformity. The present invention is an "air floatation mattress ... support[ing] a recumbent patient entirely by means of a throttled flow of pressurized air which also ventilates and cools all adjacent areas of the patient's skin." '767 patent, col. 2, ll. 41–45. To enable the mattress to "continuously ventilat[e] all areas of the skin adjacent the mattress," there must be airflow over the entire plan surface area as the claim recites. *Id.* at col. 3, ll. 4–5. In fact, the written description explains:

> [P]ressurized air passes *evenly through virtually the entire plan surface area of the top wall 26.* As a consequence, such air also serves to inflate the upper compartment 40 between top wall 26 and secondary wall 36. Such pressurized air then flows evenly through the suede or leather secondary wall 36; here again, this airflow is *substantially even over substantially the entire plan surface area of the wall 36.*

*Id.* at col. 5, ll. 18–25 (emphasis added). Unless the air mattress has uniform airflow over substantially the entire plan surface area, a patient lying on the secondary wall would not be "supported *entirely by*

*the inflatable compartment* and chamber without the necessity of spines or other internal, non-inflatable solid support structure within or forming a part of the mattress apparatus." *Id.* at col. 2, ll. 63–66 (emphasis added).

The record of the administrative proceedings before the PTO supports this interpretation of claim 1. In seeking allowance of the pending claims, the patentee added clauses (b) and (d) to claim 1 and remarked:

> In no way does the alternating pad of the *Schild et al.* reference supply positive pressure air *throughout the entirety of the chamber during all operations of the mattress.* ... Moreover, *Gammons et al.* does not provide means for continuously maintaining positive air pressure conditions *throughout the entirety of the lower chamber during the entirety of the operation* of the mattress apparatus.

J.A. at 138–39 (emphasis added). The express statements of the patentee clarify that the airflow limitations require both a temporal and spatial uniformity. In sum, the prosecution history also supports the district court's interpretation of clauses (b) and (d). To read the claim otherwise would ignore express language of the claim requiring airflow "over substantially the entire plan surface area." '767 patent, col. 6, ll. 14–15.

▋ The district court determined that clauses (b) and (d), when properly construed, do not read on Kinetic's accused mattresses. Literal infringement of a claim occurs when every limitation recited in the claim appears in the accused device, i.e., when "the properly construed claim reads on the accused device exactly." *Amhil Enters., Ltd. v. Wawa, Inc.*, 81 F.3d 1554, 1562, 38 USPQ2d 1471, 1476 (Fed. Cir.1996). The district court construed clauses (b) and (d) to require uniform airflow in time and over the entire plan surface area. KCJ conceded that under the district court's construction, which this court upholds, "limitations of ... Clause (b) are not met by any of the accused

devices." *KCJ II,* 39 F.Supp.2d at 1289 n. 2. Accordingly, this court affirms the district court's grant of summary judgment of no literal infringement.

## III.

The district court also properly held on summary judgment that Kinetic's devices do not infringe under the doctrine of equivalents. Infringement under the doctrine of equivalents requires that the accused product contain each limitation of the claim or its equivalent. *See Warner–Jenkinson Co. v. Hilton Davis Chem. Co.,* 520 U.S. 17, 40, 117 S.Ct. 1040, 137 L.Ed.2d 146, 41 USPQ2d 1865, 1875 (1997). An element in the accused product is equivalent to a claim limitation if the differences between the two are "insubstantial" to one of ordinary skill in the art. *See id.* However, prosecution history estoppel prevents the application of the doctrine of equivalents as a tool to recapture subject matter surrendered during prosecution. *See Litton Sys., Inc. v. Honeywell, Inc.,* 140 F.3d 1449, 1458, 46 USPQ2d 1321, 1327 (Fed.Cir.1998). Application of the rule precluding use of the doctrine of equivalents to recapture claim scope surrendered during patent acquisition is a question of law subject to review without deference. *See Mark I Mktg. Corp. v. R.R. Donnelley & Sons Co.,* 66 F.3d 285, 291, 36 USPQ2d 1095, 1100 (Fed.Cir.1995).

This court concludes that the prosecution history of the '767 patent supports the district court's refusal to apply the doctrine of equivalents. The prosecution history reveals that KCJ, in an attempt to obtain allowance of the pending claims over the cited prior art *Schild et al.·*and *Gammons et al.,* added clauses (b) and (d) in their entirety. Additionally, KCJ supplemented the claim amendment with the following remark:

> [C]laim 1 as now amended specifically and unambiguously recites means for introduction of positive pressure air into the chamber in order to "continuously maintain positive air pressure conditions throughout the entirety of said chamber during the entirety of operation of said

mattress apparatus...." In no way does the alternating pad of the *Schild et al.* reference supply *positive pressure air throughout the entirety of the chamber during all operations of the mattress.*

. . . .

> The *Gammons et al.* reference ... is likewise very different from the structure as claimed in the present claims.... [G]*ammons et al.* does not employ a chamber having an upper wall which is constructed for substantially uniform air flow through substantially the entire plan surface of the upper wall. Moreover, *Gammons et al.* does not provide means for continuously maintaining *positive air pressure conditions throughout the entirety of the lower chamber during the entirety of the operation of the mattress apparatus.*

J.A. at 138–39 (emphasis added). Following the claim amendment and the accompanying remarks, the examiner allowed the pending claims.

On appeal, KCJ argues that the amendment and the remarks should impose only a temporal uniformity because spatial uniformity would not distinguish the pending claims over the prior art. However, this court concludes that KCJ's statements reflect a clear and unmistakable surrender of mattresses without airflow "throughout the entirety of the lower chamber." *Id.* The added claim language as well as the accompanying remarks show that KCJ narrowed the claims to require spatial and temporal uniformity to obtain allowance of the pending claims. In fact, KCJ admits in its appeal brief that "KCJ added specific language, including the clauses at issue, for the express purpose of distinguishing the '767 patent from the cited prior art."

Accordingly, this court holds that the prosecution history precludes KCJ from recapturing subject matter surrendered during prosecution through the doctrine of equivalents. As mentioned above, KCJ conceded that Kinetic's devices do not satisfy the spatial uniformity limitation. KCJ

may not now employ the doctrine of equivalents to extend clauses (b) and (d) to encompass Kinetic's devices, which are not within the legal boundaries of claim 1. This court therefore affirms the district court's grant of summary judgment of noninfringement under the doctrine of equivalents.

## CONCLUSION

Because Kinetic's accused mattresses do not infringe claim 1 of the '767 patent, either literally or equivalently, this court affirms the district court's grant of summary judgment of noninfringement.

## COSTS

Each party shall bear its own costs.

*AFFIRMED.*