# United States Court of Appeals for the Federal Circuit

2008-1434

EVERY PENNY COUNTS, INC.,

Plaintiff-Appellant,

v.

AMERICAN EXPRESS COMPANY,

Defendant-Appellee,

and

VISA U.S.A., INC.,

Defendant-Appellee,

and

GREEN DOT CORPORATION,

Defendant-Appellee,

and

MASTERCARD INTERNATIONAL INCORPORATED,

Defendant-Appellee.

-------------------------------------------

2008-1438

EVERY PENNY COUNTS, INC.,

Plaintiff-Appellant,

v.

FIRST DATA CORPORATION,

Defendant-Appellee,

and

VALUTEC CARD SOLUTIONS, LLC,

Defendant-Appellee,

and

INCOMM HOLDINGS, INC.,

Defendant-Appellee,

and

COMDATA STORED VALUE SOLUTIONS, INC.,

Defendant-Appellee.

Harvey S. Kauget, Phelps Dunbar LLP, of Tampa, Florida, argued for plaintiff-appellant in appeals 2008-1434 and 2008-1438.  With him on the briefs was Eric R. Pellenbarg.

Peter J. Armenio, Kirkland & Ellis, LLP, of New York, New York, argued for all defendants-appellees in appeal 2008-1434.  With him on the brief for American Express Company was John C. Spaccarotella.  Of counsel were James E. Marina and Ryan Coletti.  On the brief for Visa U.S.A., Inc., were Roderick M. Thompson, Helen Dutton, and Eugene Y. Mar, Farella Braun & Martel LLP, of San Francisco, California.  On the brief for Green Dot Corporation were J. Bennett Clark and Ameer Gado, Bryan Cave LLP, of St. Louis, Missouri.  On the brief for Mastercard International Incorporated were Robert C. Scheinfeld and Eliot D. Williams, Baker Botts L.L.P., of New York, New York.

Alan M. Fisch, Kaye Scholer LLP, of Washington, DC, argued for defendants-appellees First Data Corporation, Valutec Card Solutions, LLC, InComm Holdings, Inc., and Comdata Stored Value Solutions, Inc.  With him on the brief for Comdata Stored Value Solutions, Inc., were Jason F. Hoffman, Coke Morgan Stewart, R. William Sigler, and Kevin W. Jakel.  On the brief for InComm Holdings, Inc., were Michael S. Connor, Benjamin F. Sidbury, and Theresa Conduah, Alston & Bird LLP, of Charlotte, North Carolina.  On the brief for Valutec Card Solutions, LLC, were Scott J. Bornstein and Allan A. Kassenoff, Greenberg Traurig, LLP, of New York, New York.

Mark M. Supko, Crowell & Moring LLP, of Washington, DC, for defendant-appellee First Data Corporation.  With him on the brief was Michael I. Coe.

Appealed from:  United States District Court for the Middle District of Florida

Judge Richard A. Lazzara

# United States Court of Appeals for the Federal Circuit

2008-1434

EVERY PENNY COUNTS, INC.,

Plaintiff-Appellant,

v.

AMERICAN EXPRESS COMPANY,

Defendant-Appellee,

and

VISA U.S.A., INC,

Defendant-Appellee,

and

GREEN DOT CORPORATION,

Defendant-Appellee

and

MASTERCARD INTERNATIONAL INCORPORATED,

Defendant-Appellee.

--------------------------------------

2008-1438

EVERY PENNY COUNTS, INC.,

Plaintiff-Appellant,

v.

FIRST DATA CORPORATION,

Defendant-Appellee,

and

VALUETEC CARD SOLUTIONS, LLC,

Defendant-Appellee,

and

INCOMM HOLDINGS, INC.,

Defendant-Appellee,

and

COMDATA STORED VALUE SOLUTIONS, INC.,

Defendant-Appellee.

———————————————

Appeal from the United States District Court for the Middle District of Florida in case nos. 8:07-CV-1254 and 8:07-CV-1255, Judge Richard A. Lazzara.

———————————————

DECIDED: April 30, 2009

———————————————

Before MICHEL, <u>Chief Judge</u>, BRYSON, <u>Circuit Judge</u>, and CUDAHY, <u>Senior Circuit Judge</u>.[*]

CUDAHY, <u>Senior Circuit Judge</u>.

   Plaintiff-Appellant Every Penny Counts, Inc. (EPC) appeals two final judgments

by the United States District Court for the Middle District of Florida.  The first judgment

---

   [*]   Honorable Richard D. Cudahy, Senior Circuit Judge, United States Court of Appeals for the Seventh Circuit, sitting by designation.

rejected EPC's patent infringement claims against defendants American Express Co., Visa U.S.A., Inc., Green Dot Corp and Mastercard International, Inc. (the Open Gift Card Defendants). The second judgment rejected EPC's infringement claim against defendants First Data Corp., Valutec Card Solutions, LLC, Incomm Holdings, Inc. and Comdata Stored Value Solutions, Inc. (the Closed Gift Card Defendants). EPC stipulated to the entry of both judgments following a <u>Markman</u> hearing, at the conclusion of which the district court adopted the Open Gift Card Defendants' proposed construction of certain terms in EPC's patent claims. We affirm.

I.

EPC is a patent holding company that has patented a method for donating "excess cash" to charities and savings accounts. Its founder Dr. Bertram Burke is a retired psychoanalyst who relates his "invention" back to an experience he had buying ice cream: after he paid for an ice cream cone, he was given 52 cents in change and he thought that this small amount of change was practically worthless. He considered putting the change in a canister on the counter ostensibly intended to raise money for a charitable cause, but he did not trust that the money in the canister would actually be devoted to charity. He describes his invention as a way of solving this "problem of loose change." At issue in this case are five patents, which describe an "automatic donation system" for contributing "excess cash"—or some equivalent term—from retail sales transactions into "predetermined" charitable or savings accounts.

In 2007, EPC brought two separate patent infringement suits against two sets of defendants, each of whom makes and sells gift cards that can be used instead of cash to complete retail transactions. The Open Gift Card Defendants sell gift cards that can

be used in multiple retail locations; the Closed Gift Card Defendants sell gift cards that must be used with one specified vendor. EPC alleges that both types of gift cards infringe its patents because both involve a means of "loading value onto accounts at a point-of-sale terminal."

The district court held a joint claim construction hearing, at which the parties agreed that the court's construction of the term "excess cash" was potentially dispositive. The Open Gift Card Defendants proposed to construe "excess cash" as an "amount selected by the payor beyond the total amount due at the point of sale." (In other words, "excess cash," under the Open Gift Card Defendants' construction, is the "loose change," the problem of which EPC's "invention," such as it is, was meant to solve.)

On its face, EPC's proposed construction was not so different from that of the Open Gift Card Defendants. EPC proposed to construe "excess cash" as "an amount . . . offered in excess of the <u>sale price</u> of merchandise" (emphasis added). However, during the hearing, it became clear that EPC was relying on a non-traditional understanding of the meaning of "sale price." Under EPC's proposed interpretation of "sale price"—which is to say, <u>its interpretation of its proposed interpretation</u> of the claim term—an item's "sale price" is the portion of a transaction that a merchant would account for as a sale. According to EPC, the "sale price" of a $50 gift card may be as low as $0, because the merchant does not typically account for transactions involving gift cards as "sales" until the gift card is redeemed. During the hearing, EPC offered no evidence in support of its proposed interpretation of "sale price," or of accounting

practice with respect to gift card transactions. Instead, EPC's attorney simply asserted that this is how merchants understand the phrase "sale price."

At the conclusion of the <u>Markman</u> hearing, the district court adopted the Open Gift Card Defendants' proposed construction of "excess cash." EPC admitted that it could not prove infringement against either set of defendants under this construction, stipulated to the entry of final judgment in both cases and brought separate appeals. EPC concedes that the two appeals raise the same issues.

II.

We review <u>de novo</u> the district court's construction of the disputed claims. <u>Storage Tech. Corp. v. Cisco Sys., Inc.</u>, 329 F.3d 823, 830 (Fed. Cir. 2003). The purpose of claim construction is to determine the meaning and scope of the patent claims that the plaintiff alleges have been infringed. <u>O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.</u>, 521 F.3d 1351, 1360 (Fed. Cir. 2008). "The construction that stays true to the claim language and most naturally aligns with the patent's description of the invention will be, in the end, the correct construction." <u>Phillips v. AWH Corp.</u>, 415 F.3d 1303, 1316 (Fed. Cir. 2005) (en banc) (<u>quoting</u> <u>Renishaw PLC v. Marposs Societa' per Azioni</u>, 158 F.3d 1243, 1250 (Fed. Cir. 1998)).

At the center of this dispute is the meaning of the phrase "excess cash payment." EPC's patents describe a method for "apportioning . . . a part of [an] <u>excess cash payment</u> among a number of predetermined accounts" (emphasis added).[1] Again, we "focus[] at the outset on how the patentee used the claim term in the claims,

---

[1]     The patents-in-suit are related. For simplicity we refer to the disclosure of U.S. Patent No. 5,621,640. The other patents-in-suit are U.S. Patent Nos. 6,088,682; 6,876,976; and 7,171,370.

specification, and prosecution history, rather than starting with a broad definition and whittling it down." Phillips, 415 F.3d at 1321. Of particular relevance is the patent specification, which we have described as "the primary basis for construing the claims." Standard Oil Co. v. Am. Cyanamid Co., 774 F.2d 448, 452 (Fed. Cir. 1985); see also Metabolite Labs., Inc. v. Lab. Corp. of Am. Holdings, 370 F.3d 1354, 1360 (Fed. Cir. 2004) ("In most cases, the best source for discerning the proper context of claim terms is the patent specification . . . .").

In the present case, the patent specification strongly supports the construction of "excess cash" that the district court ultimately adopted. The specification describes the patent as a method "for conveniently and frequently donating to qualified charities and savings or other accounts." This method, in turn, is further described as follows:

> In current shopping situations a clerk inputs the price of all items in a cash register and the latter totals the price. The consumer offers either the exact amount of cash or a sum exceeding the price, and the clerk enters that amount. The cash register then subtracts the price from the cash.

> The excess cash offers the customers an opportunity to save small amounts of money painlessly. It also affords the consumer to donate [sic] small amounts of money to charity.

The portion of the specification quoted above tells us what "excess cash" means in the context of the patent claim: "excess cash" is what is left over after the merchant subtracts the price of the items the consumer wishes to buy from the cash the consumer tenders to complete the sale. Where the consumer does not offer a sum in excess of the total displayed on the cash register, then there is no excess cash. All this is captured quite well by the construction of "excess cash" that the district court ultimately adopted, according to which "excess cash" refers to "an amount selected by the payor beyond the total amount owed at the point of sale."

2008-1434, -1438                                6

EPC has surprisingly little to say about what it alleges is substantively wrong with the district court's construction, or why its proposed construction would be better on the merits. Instead, it attempts to assign error to the district court's construction on a number of procedural grounds. Principally, it argues that the court erred by (1) spending a portion of the claim construction hearing considering the meaning of the phrase "sales price," which was not a disputed claim term; and (2) using the accused products to tailor a construction of the patent claims that would make it impossible for EPC to prove infringement. Neither of these arguments has merit.

EPC's first argument is that the district court erred by spending a portion of the claim construction hearing considering the meaning of the phrase "sales price," which was not a disputed claim term. This argument is somewhat puzzling, since it was EPC's own proposed construction that raised questions concerning the meaning of "sales price." EPC proposed to construe "excess cash" as "an amount . . . offered in excess of the <u>sale price</u> of merchandise" (emphasis added). It admitted, however, that the parties disagree about what constitutes a "sale." According to the defendants, a sale occurs when cash changes hands at the cash register. According to EPC, by contrast, to call a transaction a sale is to imply that the merchant would treat the cash the consumer tenders as income on its accounting statements. EPC also insists—without offering any evidence—that when a consumer purchases a gift card, a merchant would not consider this to be a sale.

In the light of this acknowledged disagreement over the meaning of "sales price," the fact that EPC would both propose to define its patent claims in terms of this phrase and then fault the court for attempting to clarify the phrase's meaning is at best ironic

and at worst disingenuous. Again, the court's obligation is to ensure that questions of the scope of the patent claims are not left to the jury. O2 Micro, 521 F.3d at 1361-62. In order to fulfill this obligation, the court must see to it that disputes concerning the scope of the patent claims are fully resolved. Id. In the present case, to evaluate EPC's proposal concerning the scope of its claims, the court first had to understand this proposal. If the court had adopted EPC's proposed construction without first assigning a fixed meaning to this construction, then it would quite clearly have failed to assign "a fixed, unambiguous, legally operative meaning to the claim." Liquid Dynamics Corp. v. Vaughn Co., 355 F.3d 1361, 1367 (Fed. Cir. 2004). Thus, there was nothing improper about the fact that the court interpreted EPC's (quite slippery) proposed construction. As Michele de Montaigne has said, there are times when "[w]e need to interpret interpretations more than to interpret things." Jacques Derrida, Structure, Sign and Play in the Discourse of the Human Sciences, in Writing and Difference 278 (Alan Bass, trans. 1980) (quoting Montaigne).

Equally without merit is EPC's argument that the district court erred by "tailoring its claim construction to fit the dimensions of the accused product." A court may not use the accused products for the sole purpose of arriving at a construction of the claim terms that would make it impossible for the plaintiff to prove infringement. See Wilson Sporting Goods Co. v. Hillerich & Bradsby Co., 442 F.3d 1322, 1331 (Fed. Cir. 2006). But that is not what the court did here. To the contrary, the court quite properly invited the parties' views of what they thought "excess cash" meant in the context of a series of hypothetical transactions, some of which involved the accused products. For example, the court described a situation in which a consumer tenders $50 for a grocery store gift

card with a face value of $50, and then asked the parties to identify whether there was any "excess cash" in that transaction, and if so, what portion of the amount tendered constitutes the "excess." In other words, the court considered the accused products only to elicit the parties' views about what the claim term means in the context of a concrete transaction involving these products. EPC's suggestion that this was improper is way wide of the mark. See id. at 1326-27 ("While a trial court should certainly not prejudge the ultimate infringement analysis by construing claims with an aim to include or exclude an accused product or process, knowledge of that product or process provides meaningful context for the first step of the infringement analysis, claim construction."); Aero Prods. Int'l, Inc. v. Intex Recreation Corp., 466 F.3d 1000, 1012 n.6 (Fed. Cir. 2006) ("Although the court revealed an awareness of the accused device, the court's awareness of the accused device is permissible.").

In short, the district court correctly construed the claim terms in EPC's patents. EPC's attempts to assign error to the process by which the court arrived at its construction cannot succeed.

III.

The district court appropriately construed the key term in EPC's patent claims. We therefore affirm. The defendants may recover their costs accrued in this court.

AFFIRMED.